George F. X. McInerney, J.
Petition pursuant to CPLR article 78 for an order for the issuance of a certificate pursuant to section 276 (subd. 4) of the Town Law and annulling and setting aside the determination of the respondent is denied, and respondents’ cross motion to disimss the petition is granted.
Petitioner owns approximately 35 acres at Hampton Bays, New York. As a condition to approving the plat the planning board required the dedication to the town of a 15-foot strip thus precluding any further subdivision of the remaining 27 *355 acres and confining the petitioner to developing 7% acres of the tract.
On June 10,1970, the petitioner received a conditional approval from the planning board for a subdivision of 15 plots subject to the approval of the Suffolk County Health Department. When the approval came through it provided for 13 plots instead of 15 plots. The petitioner conveyed the 15-foot .strip above referred to together with a 15-foot drainage easement and posted its bond with the town.
Thereafter the planning board held a public hearing. When it filed its decision, it approved the subdivision but as to 8, not 13 plots.
The petitioner contested the board’s decision on the basis of late filing in the Town Clerk’s office since the decision was not filed within 45 days of the public hearing and petitioner contends that this nullified the decision. The certificate demanded by the petitioner in accordance with section 276 (subd. 4) from the Town Clerk was not issued.
Petitioner’s citation of Matter of Fullam v. Kronman (51 Misc 2d 1079, affd. 31 A D 2d 947) is distinguishable on the facts. There the decision was not made until the time for making it had expired. Here the decision was made within 45 days of the hearing but the filing with the planning board was made after the 45-day period. Matter of Madison at Merrick v. Leonard (44 Misc 2d 149) is also distinguishable as that case had to do with the subject of submission of plans and not with filing of the decision. There apparently is nothing in the law concerning the filing of the decision within 45 days of the hearing.
Section 261 of the Town Law provides: “ For the purpose of promoting the health, .safety, morals, or the general welfare of the community, the town board is hereby empowered by ordinance to regulate and restrict * * * the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings ’ ’.
Hnder this power it would appear that all zoning areas shown on a zoning map properly approved by the municipality should be assumed to have met the stated criteria.
The instant premises were placed by the town in a district which required a building plot area of 15,000 square feet with a frontage of 100 feet, and thus presumably each lot of this character would be entitled to a building permit with respect to lot area in the absence of some additional requirement.
The dangers of such an inflexible standard were avoided by a subsidiary grant of power to the planning boards.
*356 Section 277 of the Town Law states: “that where a zoning ordinance has been adopted by the town the plots shown on said plat shall at least comply with the requirements thereof; that the land shown on such plats shall be of such a character that it can be used safely for building purposes without danger to health or peril from fire, flood or other menace ”.
The map as approved by the planning board on 10 March 1971 permittted only 8 lots, which about doubled the normal (and assumed reasonable) requirement of 15,000 square feet. The first question, then, is can the planning board require more area per building plot than the standard set by the town board, present certain additional facts 1
The answer is yes. The language of the statute (“plots * * * shall at least comply”) indicates that although the planning board cannot usually liberalize the town board’s minimal requirements (cf. Town Law, § 281), it may increase them. In fact the requirements of roads or parks by a planning board decrease the usable building area of any subdivision, but no question exists as to the reasonableness of these conditions imposed upon the right to subdivide. (Matter of Brous v. Smith, 304 N. Y. 164; Jenad, Inc. v. Village of Scarsdale, 18 N Y 2d 78; 3 Rathkopf, Law of Zoning and Planning, Subdivision Control, § 7.)
The determining question then becomes, upon what standard can the board in this case require the petitioner to give up five lots ?
The decision of the board recites that the evidence at the hearing established “ a serious risk of pollution in Squires Pond because of the density shown on the map.”
Squires Pond is a salt water pond unique in our present day. It sustains much sea and wild life and the local ecology is gravely concerned with its preservation.
This squarely poses a narrow issue — can the board prevent the petitioner from normal development because of possible resultant pollution beyond the confines of the .subdivision?
The board was justified, on the evidence before it, in finding that this proposed subdivision was a threat to the survival of Squires Pond, but this does not answer the extremely complicated issues involved.
The basic power of the enabling statute is usually based upon the police power of the municipality and the harm to the individual owner must have a reasonable proportion to the public good and must not result in the taking of private property without just compensation contrary to due process. (Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493.)
*357 There, the city attempted to solve its parking problem by zoning a specific plot for that purpose. The court said at page 498:
“ The city justifies the ordinance and its amendment by .reason of the congested traffic and parking conditions now existing in Mount Vernon which, it says have become so acute as to reach a strangulation point. However compelling and acute the community traffic problem may be, its solution does not lie in placing an undue and uncompensated burden on the indivdual owner of a single parcel of land in the guise of regulation, even for a public purpose.”
The objection to the approval of the 15-plot subdivision here is that it may cause pollution, not of land within the subdivision, but land outside of it.
Does the prevention of pollution of Squires Pond benefit the subdivider any more than the general public, and if not, should he be required to pay for it wholly, rather than his proportionate share?
A good discussion of the underlying complexities of these issues is found in the Tale Law Journal (Vol. 73, p. 119 [June, 1964]), and so the court will address itself only to the relevant New York cases.
In Gulest Assoc. v. Town of Newburgh (25 Misc 2d 1004, affd. 15 A D 2d 815) the court held unconstitutional a condition requiring the deposit of money in lieu of park land on the grounds that the parks (or money) could be used by anyone in the town, and thus did not directly benefit the subdivider, saying (25 Misc 2d 1007):
“ In effect, the statute as amended compels a landowner who proposes to subdivide to pay more than his proportionate share of the moneys to be spent on parks, playground and recreational facilities for the town as a whole. ’ ’
This case would indicate that the planning board could not require the surrender of the five lots, assuming again that the prevention of pollution would inure equally to all of the local inhabitants, but Jenad, Inc. v. Village of Scarsdale (18 N Y 2d 78, supra) overruled it, and allowed the imposition of money in lieu of land. The majority opinion is based on a general statement of police power, saying (p. 84): “ Going beyond Gulest (supra) plaintiff (and amicus curies) insist that what Scarsdale has imposed is an unconstitutional and unauthorized 1 tax ’ on plaintiff and others similarly situated, in that the payments are for general governmental purposes thus charged against subdivision developers. We think that this *358 labeling distorts the purpose and meaning of the requirements. This is not a tax at all but a reasonable form of village planning for the general community good.”
The dissent by Judge Van Voorhis (with Judges Burke and Scileppi) analyzes the facts with respect to the issues discussed at the beginning of this opinion in full detail and persuasiveness. No purpose would be served here in repeating them.
Finally in Matter of Pearson Kent Corp. v. Baer (28 N Y 2d 396, 398) the court upheld the denial of approval of a subdivision with the following language: ‘ ‘ In exercising its authority to grant or deny approval of a subdivision under the same section it may consider the impact of the proposed development on adjacent territory and property within its jurisdiction.”
While this case was under the statutory power of the Nassau County Planning Cómmisison rather than the Town Law, the constitutional issues would be the same.
The court continued (p. 399): “ But the commission is not limited, in disapproving a subdivision, to an intrinsic evaluation of the subdivision itself. It may consider, among other things, the ‘ safety ’ and ‘ general welfare ’ of the county, including adjacent areas. Thus, as a matter of legal power, the commission acted within its jurisdiction. And if it was within its jurisdiction it is not easy to say that its action was arbitrary and without reasonable basis.”
In an article 78 proceeding only certain questions may be raised. (CPLR 7803, subd. 3.)
“A determination made by an administrative body must be viewed seriously. If there is any reasonable basis for its action, if there is sufficient evidence to permit the exercise of its discretionary powers, its conclusions may not be disturbed. The" rule applies as well to planning boards as to any administrative agency. ” (Matter of Hiscox v. Levine, 31 Misc 2d 151, 153-154.)
u Reasonable men may reasonably differ, but the agency or person saddled with the responsibility of decision, absent fraud, collusion, illegality or action clearly arbitrary and without foundation, should have its decisions upheld.” (Matter of Kayfield Constr. Corp. v. Morris, 15 A D 2d 373, 379.)
The petitioner has not shown that the planning board was arbitrary or capricious.